UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEYANIRA C.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 25-cv-05354-NW

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: ECF Nos. 11, 13

Plaintiff Deyanira C. seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act. ECF No. 11. The Commissioner cross-moves to affirm. ECF No. 13. For the reasons stated below, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion for summary judgment, and DENIES the Commissioner's cross-motion for summary judgment.

## I. BACKGROUND

Plaintiff filed an application for Social Security Disability Insurance benefits on June 30, 2022, alleging disability beginning November 3, 2020. AR 189–98; *see* AR 199–200. ALJ Hong held a telephonic hearing on February 27, 2024, at which Plaintiff appeared with counsel.[2] AR 41–68. On May 8, 2024, the ALJ issued an unfavorable decision. AR 26–40.

The ALJ determined that Plaintiff has the following severe impairments: degenerative disc

[1] Partially redacted pursuant to Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Although the transcript's preamble states that "[t]he claimant appeared in person," the ALJ stated on the record that "we're holding the hearing today by telephone" and "assure[d] [Plaintiff] that we are protecting your privacy in the same way that we would if we were having an in-person hearing. So I'm just want to let you know that I'm in a private area in my home." AR 43.

United States District Court
Northern District of California

disease, occipital neuralgia, migraines, fibromyalgia, diabetes mellitus, obstructive sleep apnea, and atrial fibrillation. AR 31. The ALJ found that Plaintiff retains the following residual functional capacity ("RFC"): "[Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except with no climbing ladders, ropes, and scaffolds; occasional postural activities; and must avoid concentrated exposure to hazards and pulmonary irritants." AR 33; *see* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").

A vocational expert ("VE") testified that Plaintiff could perform her past work as an interpreter and financial counsel "as actually performed, and as generally performed in the national economy." AR 36; *see* AR 65–66. The ALJ thus concluded that Plaintiff is not disabled. AR 36.

## II. LEGAL STANDARD

Under the Social Security Act, a claimant is considered "disabled" if they meet two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 1382c(a)(3)(A)-(C) (the analysis is substantially similar under Title II and Title XVI). First, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that the claimant is unable to perform their previous work and cannot, based on their age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity;" (2) whether the claimant has a "severe medically determinable physical or mental

impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual function capacity," the claimant can still do his "past relevant work"' and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation modified). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation modified). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* Simply put, "[i]n Social Security cases, federal courts 'are not triers of fact'," *M. L. v. Kijakazi*, No. 20-CV-07919-RS, 2023 WL 1927735, at *3 (N.D. Cal. Feb. 10, 2023) (citations omitted), and if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (citation modified). "Finally, [a district court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. District courts have the power to enter a judgment, "upon the pleadings and transcript of the record," with or without remanding the complaint for a rehearing. 42 U.S.C. § 405(g).

## III. DISCUSSION

### A. Plaintiff's Subjective Symptom Testimony

Plaintiff argues the ALJ failed to identify which specific allegations were not supported, or what activity conflicted with her symptoms. Plaintiff therefore asserts that the ALJ failed to articulate clear and convincing reasons for discounting Plaintiff's symptom testimony.

#### 1. Legal Standard

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Hum. Servs.*, 726 F.2d 1470, 1473

United States District Court
Northern District of California

(9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citing 42 U.S.C. § 423(d)(5)(A)), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal quotation marks and citation omitted). If the ALJ's assessment "is supported by substantial evidence in the record, [district courts] may not engage in second-guessing." *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate "specific, cogent reasons" for their credibility determination. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ "must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Greger*, 464 F.3d at 972 (internal quotation marks omitted); *see also Thomas*, 278 F.3d at 958 (ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony"). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen* v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

**2. Analysis**

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be

United States District Court
Northern District of California

expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 34. The ALJ explained that

> There is some evidence of degenerative disc disease, but the radiographic evidence shows mild findings (exhibit 1F/816). There are ongoing complaints of headaches, with increased headaches around the time the claimant stopped working that were attributed to stress (exhibit 1F/385) or not using her CPAP (exhibit 5F/237). [Plaintiff] testified that her headaches are now under control, occurring only once per month and not affecting her ability to function. The medical record shows good migraine control with medications and supplements (exhibits 1F/745, 5F/164). [Plaintiff] reported worsening symptoms of fibromyalgia around the time she stopped working (exhibit 1F/415), but she was not referred to a rheumatologist. [Plaintiff] is treated conservatively by a specialist in chronic pain management, who noted that the claimant declined pain medications (exhibit 1F/489). The claimant's diabetes is controlled with exercise and diet (exhibit 8F/7). The claimant was diagnosed with atrial fibrillation in 2023, which was believed to be more likely from anxiety (exhibit 7F/276-277).

*Id.*

The ALJ further found that "[Plaintiff's] statements about the intensity, persistence, and limiting effects of his or her symptoms . . . are inconsistent because [Plaintiff] stopped working because she got COVID and she did not return to work thereafter due to anxiety." AR 34. According to the ALJ, "[Plaintiff] received some mental health treatment, and progress notes show repeatedly normal mental status examinations except for mood at times (exhibit 5F). [Plaintiff's] allegations that her existing medical conditions worsened are not supported by the medical record, which shows some increased symptoms, likely caused by stress, which resolved with treatment." *Id.*

As the ALJ cites no evidence of malingering, the ALJ must articulate "provide "specific, clear and convincing" reasons for rejecting Plaintiff's testimony. "This requires the ALJ to specifically identify the testimony from a claimant she or he finds not to be credible and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citation modified). "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ lacked specific, clear, and convincing reasons for rejecting Plaintiff's testimony. Specifically, the ALJ failed to account for Plaintiff's fibromyalgia in her evaluation of Plaintiff's treatment. "Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017). Fibromyalgia is a "common," "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." Soc. Sec. Ruling ("SSR") 12-2P, Titles II & XVI: Evaluation of Fibromyalgia, 2012 WL 3104869, at *2 (Jul. 25, 2012). "[F]ibromyalgia . . . is poorly understood within much of the medical community." *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (citation omitted).

The ALJ's characterization of Plaintiff's treatment for fibromyalgia, in the larger analysis of Plaintiff's other "medically determinable impairments," is brief and vague. For example, the ALJ stated that "[Plaintiff] reported worsening symptoms of fibromyalgia around the time she stopped working (exhibit 1F/415), but she was not referred to a rheumatologist." AR 34. The ALJ then immediately stated that "[Plaintiff] is treated conservatively by a specialist in chronic pain management, who noted that the claimant declined pain medications (exhibit 1F/489)." *Id.* As an initial matter, it is unclear whether the ALJ's reference to Plaintiff's pain management was connected to the discussion of Plaintiff's fibromyalgia, or whether it was generally applicable to Plaintiff's myriad of "severe impairments" as found by the ALJ. AR 31, 34.

The ALJ also failed to explain how she considered Plaintiff's fibromyalgia in her determination that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." AR 34. Fibromyalgia "is diagnosed 'entirely on the basis of patients' reports of pain and other symptoms,' and 'there are no laboratory tests to confirm the diagnosis.'" *Revels*, 874 F.3d at 666 (quoting *Benecke*, 379 F.3d at 590). "Indeed, fibromyalgia is diagnosed, in part, by evidence showing that another condition does not account for a patient's symptoms." *Id.* (citing SSR 12-2P, 2012 WL 3104869, at *3); *see id.* at 657 ("[D]iagnosis of fibromyalgia does not rely on X-rays or MRIs."). It was therefore error to reject Plaintiff's symptom testimony on grounds that it is not corroborated by objective medical evidence. *See id.* at 666 (ALJ erred in

finding that testimony by plaintiff with fibromyalgia "was undercut by the lack of 'objective findings' supporting her claims of severe pain"); *Glanden v. Kijakazi*, 86 F.4th 838, 847 (9th Cir. 2023) ("[A]s we have recognized, subjective pain is not always verifiable through a physical examination."); *Benecke*, 379 F.3d at 594 ("The ALJ erred by effectively requiring objective evidence for a disease that eludes such measurement.") (citation modified).

The ALJ also failed to explain why the fact that the lack of a referral to a rheumatologist undermines Plaintiff's testimony. The Ninth Circuit has recognized that "[r]heumatology is the relevant specialty for fibromyalgia." *Benecke*, 379 F.3d at 594 n.4 (citation omitted); *see Timpone v. Kijakazi*, No. 18-55155, 2022 WL 1599128, at *2 (9th Cir. May 20, 2022) ("A 'rheumatologist's specialized knowledge is particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community.'") (quoting *Revels*, 874 F.3d at 664; additional quotation marks and citation omitted). But as Plaintiff points out, SSR 12-2P—which identifies the criteria for evaluating a diagnosis of fibromyalgia—does not require diagnosis or treatment by a rheumatologist. ECF No. 11 at 15. Moreover, Plaintiff was referred to and participated in a chronic pain program. *See, e.g.*, AR 821 (January 13, 2022, "[Plaintiff] attended the Pain Program MD Overview."); AR 830–38 (February 10, 2022 telehealth visit in pain clinic with Rodd Galt Stockwell, M.D.); AR 846 (February 24, 2022, "Patient called in and scheduled for the virtual pain skills classes for the Vacaville pain department starting Tuesday 3/8 at 10 Am."); AR 891–95 (March 22, 2022 telephone evaluation in chronic pain program). The ALJ made no attempt to square this treatment with the lack of a referral to a rheumatologist.

Regarding Plaintiff's pain, according to the record cited by the ALJ, on February 1, 2022, Plaintiff complained of "pain along her upper arms, neck, [and] headaches" that "worse[ned] after her covid infection[.]" AR 825. Plaintiff "ha[d] tried nortriptyline, elavil, gabapentin, ssri" and was "not interested in opiates[,]" but "would like to be evaluated by chronic pain psychologist and if any other non opiate medication that might help her pain." AR 825–26. The fact that Plaintiff declined opiates does not support a finding that she "declined pain medications," particularly where Plaintiff sought other options to manage her pain. *See Trevizo*, 871 F.3d at 680 n.8 ("[I]t is inappropriate to factor against [the plaintiff's] symptom testimony that she declined to take

prescribed narcotics because she feared addiction and instead took other medication that addressed her pain. Taken to its logical conclusion, this could amount to a requirement that patients take any prescribed pain medications, regardless of their addictive or dangerous qualities, simply to avoid being found to have exaggerated pain.").

The ALJ further found that "[t]he medical record shows good migraine control with medications and supplements (exhibits 1F/745, 5F/164)." AR 34. The evidence the ALJ cited does not support this contention. Exhibit 1F/745 is a record of a June 22, 2022 medical visit during which Plaintiff was diagnosed with a migraine. AR 1082. Plaintiff presented as "having a bad migraine [and was] out of her Imitrex RX[, and] [wa]s also having bad back pain as well[.]" *Id.* The record also shows that Plaintiff was "[e]valuated by clinician and condition is not improving[.]" AR 1083. Exhibit 5F/164 also does not show that Plaintiff has "good migraine control with medication and supplements." AR 1549. That exhibit consists of clinical notes from a January 27, 2023 telephone visit for medication management. *Id.* The clinical notes state that Plaintiff "[c]an sense when she may be getting migraine (meperidine for when migraines out of hand), been taking imitrex (Had been increasing frequency, but now only takes when has full migraine pain); takes 650 mg apap if she feels a headache coming on to avoid overuse of imitrex[.]" *Id.*

In any event, the fact that Plaintiff takes medication for migraines is not, without more, evidence that her migraines are well controlled. For instance, nothing in either exhibit cited by the ALJ indicates how often Plaintiff takes the medication, how effective the medication is, or whether Plaintiff's method of controlling her migraines would allow her to work. In other words, while the medication may help Plaintiff, that does not necessarily mean Plaintiff's migraines were effectively controlled with medication; it is possible that such relief is only temporary. *See Garcia v. Astrue*, No. 12CV992-WQH BLM, 2013 WL 1797029, at *14 (S.D. Cal. Mar. 13, 2013), *report and recommendation adopted*, No. 12CV992-WQH-BLM, 2013 WL 1797032 (S.D. Cal. Apr. 26, 2013) (ALJ erred in discounting the plaintiff's credibility; "while there is evidence supporting a statement that medication temporarily helped [p]laintiff's memory problems, there is not substantial evidence supporting the ALJ's conclusion that [p]laintiff's medication controlled

United States District Court
Northern District of California

her symptoms."). Further, not only do the clinical notes reveal that the severity of Plaintiff's migraines are sometimes "out of hand," but that Plaintiff nevertheless moderates her use of Imitrex to avoid overuse. AR 1549.

As to the ALJ's finding that Plaintiff's atrial fibrillation "was believed to be more likely from anxiety (exhibit 7F/276-277)" (AR 34), that too is not supported by the record. Exhibit F—a radiology report—consists of only nine pages; there are no pages 276 and 277 in that exhibit.[3]

For these reasons, the ALJ failed to provide specific, clear, and convincing reasons for discrediting Plaintiff's testimony.

**B. The ALJ's RFC Findings**

An "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (citation omitted). It is "the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 416.945(a)(1). It is first used at step four to decide whether an individual can do relevant past work. 20 C.F.R. § 416.945(a)(5)(i).

The RFC assessment must be "based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). An ALJ should consider the relevant medical evidence, including "any statements about what [a claimant] can still do that have been provided by medical sources, whether or not they are based on formal medical examinations," and "descriptions and observations of [the claimant's] limitations from [their] impairment(s), including limitations that result from [their] symptoms, such as pain." 20 C.F.R. § 416.945(a)(3). "A claimant's subjective symptoms, if credited, are relevant to the determination of a claimant's residual function capacity . . . , which is 'the most [one] can still do despite [one's] limitations." *Ferguson v.*

---

[3] To the extent the ALJ intended to refer to exhibit 6F, pages 276 and 277 are clinical notes from a March 8, 2023 "scheduled telephone encounter in pain medicine" by clinical psychologist Jessica Lester, Psy.D. AR 1968–69. These notes indicate "Severe Anxiety, panic attacks : yes" and "Severe Agitation: yes." AR 1969. There is no mention of atrial fibrillation or management of Plaintiff's anxiety.

*O'Malley*, 95 F.4th 1194, 1198 (9th Cir. 2024) (quoting 20 C.F.R. § 416.945(a)(1); brackets in the original); *see Revels*, 874 F.3d at 666 ("[A]n ALJ must take into account a claimant's symptom testimony when determining the RFC.").

Because the ALJ erred in discounting Plaintiff's symptom testimony, any decision as to whether the ALJ erred in formulating Plaintiff's RFC is premature.

**C. Remand**

Plaintiff argues the Court should remand the action for an immediate payment of benefits. ECF No. 11 at 17–19.

A court has discretion to remand a case either for additional evidence and findings or to award benefits. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989). In cases where the Social Security Administration ("SSA") erred in reaching its decision to deny benefits, § 405(g) permits the court to "revers[e] the decision of the Commissioner of Social (citation modified). The reviewing court may "reverse and remand a determination by the Commissioner with instructions to calculate and award benefits," but only when it is "clear from the record that a claimant is entitled to benefits." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). An "automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017), *as amended*, (January 25, 2018). When "[1] the record before the agency does not support the agency action, . . . [2] the agency has not considered all relevant factors, or . . . [3] the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

The Ninth Circuit applies a three-step framework to assess whether the reviewing court should remand for an award of benefits rather than further proceedings. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014). Under the "credit-as-true" rule, to remand for an award of benefits, the court first determines that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. *Id.* at 1101. If the court finds such an error, it must determine whether "the record has been fully developed," whether there are

"outstanding issues that must be resolved before a determination of disability can be made," and "whether further administrative proceedings would be useful." *Id.* When these first two conditions are satisfied, the court then credits the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability. *Leon*, 880 F.3d at 1045. Even if all conditions are met, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings. *Id.*

Because the ALJ erred in discounting Plaintiff's symptom testimony and, as a result, formulating Plaintiff's RFC, the Court proceeds to the second step of the analysis. On this record, further administrative proceedings are necessary to allow the ALJ to evaluate Plaintiff's RFC in light of her testimony about her fibromyalgia, migraines, and atrial fibrillation. The Court therefore does not reach step three in crediting Plaintiff's testimony and medical opinions as true for the purpose of a disability determination. *See Leon*, 880 F.3d at 1048.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment as to her request to remand for payment of benefits, GRANTS Plaintiff's motion in all other respects, and DENIES the Commissioner's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: August 4, 2026

Noël Wise
United States District Judge